IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHN M. JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. )<br>_____) | CIVIL ACTION NO. 0:04-21795-MBS-BM<br><br>**REPORT AND RECOMMENDATION** |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The record shows that Plaintiff applied for Disability Insurance Benefits (DIB) on July 30, 2002, alleging disability as of December 12, 2001 due to severe lower back pain. (R.pp. 42-44, 47). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on September 19, 2003. (R.pp. 168-183). At the hearing, Plaintiff amended his alleged disability onset date to March 12, 2002 since he had been working as an electrician up to that point. (R.pp. 170-171). The ALJ thereafter denied Plaintiff's claim in a written decision issued November 4, 2003. (R.pp. 14-20). The Appeals Council

subsequently denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-7).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as

2

it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was forty-two (42) years old when he alleges his disability began, has a high school education with past relevant work experience as a an electrician. (R.pp. 22-23, 42, 48, 53). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff was unable to perform any of his past relevant work, he nevertheless retained the residual functional capacity to perform sedentary work,[1] and was therefore not disabled. (R.pp. 19-20).

Plaintiff asserts that in reaching this decision, the ALJ erred by not considering the effect of Plaintiff's right knee pain and right shoulder pain on his ability to work, even though SSR 96-8p requires that an ALJ consider the impact of both severe and non-severe impairments on the ability to work; failed to adequately consider or discuss the side effects of Plaintiff's medications on his ability to work; erred in failing to find that Plaintiff met the requirements of Listing 1.04 of the

---

[1] Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

Listings of Impairments[2]; erred by improperly discounting Plaintiff's subjective testimony as to the extent of his pain and limitations and by using the Medical-Vocational Guidelines (i.e., the Grids) to make a finding that Plaintiff was not disabled even though Plaintiff has significant non-exertional impairments; and erred by improperly discounting the opinion of Plaintiff's treating physician, Dr. Louie Lawson. However, after careful consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

**(Medical History)**

The medical evidence presented to the ALJ and contained in the record confirms the ALJ's finding that Plaintiff has a severe back impairment post-laminectomy surgery on June 27, 2002. (R.p. 20, Finding No. 3; pp. 108-109, 112-119). However, this finding does not automatically entitle Plaintiff to an award of DIB. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]. Rather, the evidence must show that Plaintiff's impairment is of a disabling severity. See Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"]. Substantial evidence supports the ALJ's conclusion that Plaintiff's impairment was not disabling.

---

[2] A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).

Plaintiff's medical records show that, following his June 2002 surgery, Plaintiff had "some anterior right thigh pain possibly secondary to positioning", but had no associated sensory loss or weakness. Plaintiff's surgeon, Dr. Andrew Rhea, indicated that Plaintiff's condition would be followed "conservatively". (R.p. 108). See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [holding that conservative treatment is not consistent with allegations of disability]. Plaintiff was seen by Dr. Rhea for a follow-up visit on July 8, 2002, at which no particular problems were noted. Plaintiff had satisfactory reflexes, his spine films were satisfactory, and he was advised that he should be walking and that he could use his riding lawn mower as long as he did not do any strenuous activity. (R.p. 107). Plaintiff was also seen by Dr. W.S. Edwards (who had assisted in his surgery) on August 19, 2002, who noted that Plaintiff's x-rays showed good continued alignment and that Plaintiff had had no radicular pain. Dr. Edwards further noted that Plaintiff "[d]id not need any pain medication, but I did give him a prescription for Xanax today." (R.p. 132).

On September 5, 2002 a state agency physician (signature illegible) completed a physical residual functional capacity assessment after review of Plaintiff's medical records, and concluded that Plaintiff was capable of performing medium[3] level work. Other than finding that Plaintiff could only occasionally climb, stoop, or crawl, the state agency physician noted no limitations. (R.pp. 90-96). Dr. Rhea noted on September 16, 2002 that, despite Plaintiff's continued complaints of some low back pain, Plaintiff could resume his normal activities, and specifically that he could return to work. (R.p. 149). See Hays, 907 F.2d at 1458 [noting the significance of medical

---

[3]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). "If someone can do medium work," he is also considered capable of performing the less strenuous requirements of sedentary and light work. Id.

opinion that claimant could work]. After a follow-up examination on October 15, 2002, Dr. Edwards noted that Plaintiff's activity level had been "high" and that he had "placed a significant degree of physical demands on his spine" notwithstanding Dr. Edwards contrary recommendation. Dr. Rhea also noted that Plaintiff's back was not "fit for heavy industrial labor", and on November 26, 2002 he restricted Plaintiff "from heavy demand work activities indefinitely," but not from lesser work activity. (R.p. 131).

On December 31, 2002, a second state agency physician (signature again illegible) completed a physical residual functional capacity assessment. This physician found that Plaintiff had the physical ability for light work[4], as long as he was only occasionally required to climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, and never had to climb ladders, ropes or scaffolds. (R.pp. 97-104). Plaintiff thereafter presented to Dr. Rhea on January 28, 2003 complaining of right leg pain, but on physical examination Dr. Rhea could not detect any clear cut weakness or sensory loss. Dr. Rhea recommended Plaintiff follow-up with an MRI scan, and a scan was obtained the next day which was negative. (R.pp. 105, 146). Plaintiff had a second MRI on February 4, 2003, which revealed minimal spondylolisthesis at L5/S1, no obvious disc herniation, and no significant stenosis. (R.p. 106). After review of this MRI, Dr. Rhea recommended that Plaintiff try physical therapy and also mentioned the possibility of Plaintiff undergoing a spinal cord stimulation. However, Dr. Rhea noted that Plaintiff did "not wish to proceed with this and we will see how far we can get with further conservative efforts for right now." (R.p. 142).

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2004).

Plaintiff then went back to see Dr. Edwards on April 1, 2003, who noted that he had previously recommended that Plaintiff avoid strenuous work activities including bending, lifting, twisting and turning. Plaintiff had x-rays with him that day, and Dr. Edwards noted that the x-rays showed good continued alignment of the hardware in Plaintiff's lumbar spine with "absolutely no evidence of hardware loosening or specifically no halos around the screws and no movement in flexion and extension." Dr. Edwards stated that "[f]unctionally, [Plaintiff] has a solid arthrodesis and he declines to consider any further surgical treatment nor would I recommend any at this point in time. Activities as tolerated but, again, he is restricted from all physical demand job duties." (R.p. 130). Plaintiff also saw Dr. Rhea that same day, who found that Plaintiff's back was "unremarkable with no abnormalities palpable;" (R.p. 140); although Plaintiff continued to obtain prescription medicine from Dr. Rhea for pain. (R.pp. 139, 142).

On April 29, 2003, Plaintiff presented to Dr. Lawson (the physician who had originally referred Plaintiff to Dr. Rhea in April 2002), complaining of bilateral shoulder pain and continued low back pain. On examination, Dr. Lawson found no lumbar tenderness, normal gait, and good sensation and motor strength distally. Plaintiff was tender to palpation along the anterior aspect of both shoulders, but had no crepitus and abducted both shoulders to about 90 degrees. Plaintiff's shoulders were not erythematous or warm to the touch, and he had good external rotation and internal rotation to about T6 level bilaterally. Dr. Lawson diagnosed chronic low back pain and bilateral shoulder pain. (R.p. 161). Plaintiff continued to obtain pain medication from Dr. Lawson over the course of the following months. (R.pp. 157, 159).

**(ALJ's Decision)**

After review of Plaintiff's medical record and consideration of his subjective

7

testimony, where Plaintiff testified that he experienced constant lower back pain and could walk for only fifteen minutes at a time and sit for thirty minutes at a time, with further effects of drowsiness caused by his pain medications, the ALJ found and concluded that Plaintiff's testimony was not entirely credible, and that Plaintiff retained the residual functional capacity to perform sedentary work. (R.pp. 18-20, 176-177). While Plaintiff claims that the ALJ improperly evaluated the credibility of his subjective testimony, the ALJ specifically discussed Plaintiff's testimony in his decision and found that Plaintiff's testimony was both inconsistent with his medical records and with Plaintiff's own description of his daily activities. (R.pp. 17, 181). Contrary to the argument in Plaintiff's brief, the ALJ also specifically mentioned his consideration of Plaintiff's complaints of knee and shoulder pain in making his findings. (R.pp. 17-18). As for Plaintiff's complaint that his medications cause drowsiness such that it would affect his ability to perform work activity, this comment is not supported by his medical records, and the ALJ was not required to accept Plaintiff's characterization of this issue in his subjective testimony. *Cf.* Richmond v. Shalala, 23 F.3d 1441, 1443 (8th Cir. 1994) [complaints concerning side effects of medications deemed not credible where not supported by the medical evidence].

The records and opinions of Plaintiff's treating and examining physicians also provide substantial evidence to support the residual functional capacity found by the ALJ; see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the state agency physicians. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to

support the decision of the Commissioner]. Indeed, the RFC found by the ALJ is *more restrictive* than the physical limitations reflected in Plaintiff's medical records. The ALJ reviewed Plaintiff's testimony and compared it with this medical evidence before finding that Plaintiff's testimony concerning the severity of his symptoms and the extent of his limitations was not fully credible, and the undersigned can find no reversible error in the ALJ's treatment of Plaintiff's subjective testimony in conjunction with this medical evidence. See Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983) [claimant's exaggeration of symptoms is a relevant factor for the ALJ to consider]; see also Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

### (Listing 1.04)

With respect to Plaintiff's complaint that the ALJ improperly determined that he did not meet the requirements of Listing 1.04, the Commissioner notes that this Listing requires

> compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine); or

9

      B.  Spinal arachnoiditis, confirmed by operative note or pathology report of tissue biopsy . . . ; or

      C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively . . . .

See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

The "inability to ambulate effectively" generally means that a claimant must require the use of hand-held assistive devices that limit the functioning of both upper extremities. To ambulate effectively, the claimant must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out the activities of daily living, travel without companion assistance, and from a place of employment or school. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.002b(1) and(2).

      Here, the ALJ specifically found that Plaintiff's impairments did not meet or medically equal the criteria of any impairment set forth in the Listings, including Listing 1.04. (R.pp. 17, 20, Finding No. 4). While Plaintiff argues that Dr. Rhea's findings demonstrate he does meet the requirements for this Listing, Plaintiff's medical records, including those of Dr. Rhea, show that he was ambulatory with no prescribed need for assistive devices requiring the use of both upper extremities. These records also contain no evidence of spinal arachnoiditis and no evidence of atrophy or motor loss. See generally, (R.pp. 107, 133, 135, 140, 142, 146, 151, 161). Hence, there is substantial evidence in these medical records to support the ALJ's finding that Plaintiff did not meet the requirements of this Listing. See (R.p. 17). The fact that Plaintiff's medical records may contain *some* evidence to support his claim does not entitle him to a finding that he meets this Listing, or that he is disabled. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not

qualify."]. Plaintiff has failed to provide evidence to meet this standard. <u>Blalock</u>, 483 F.2d at 775 [it is the claimant who bears the burden of proving his disability]; <u>Sullivan</u>, 493 U.S. at 530 [Plaintiff has the burden of showing that his impairment matches a Listing]. Therefore, this claim is without merit.

**(Use of the Grids)**

Having found that Plaintiff could perform the full range of sedentary work, the ALJ used the Grids to conclude that Plaintiff was not disabled. <u>See</u> <u>Hays</u>, 907 F.2d at 1458 [affirming denial of benefits to claimant where the Medical-Vocational Guidelines directed a finding of not disabled]. Plaintiff argues that this finding was error, as the ALJ should have found as part of his conclusions that Plaintiff was required to have a sit/stand option for any work, which would have precluded use of the Grids. <u>See</u> <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985); <u>Walker v. Bowan</u>, 889 F.2d 47, 49 (4th Cir. 1989). However, Plaintiff's medical records do not reflect a need for a sit/stand option, and neither of the functional capacity assessments provided by the state agency physicians includes such a requirement. This argument is without merit.

Plaintiff also argues that he has non-exertional impairments (pain and side effects of medication) which preclude reliance on the Grids to direct a finding of not disabled. However, the ALJ did not find that Plaintiff had problems with drowsiness as a result of medications, nor did he find any other significant non-exertional limitation. The undersigned does not find any reversible error in these conclusions, as there is substantial evidence in the record to support the ALJ's findings. *Cf*. <u>Guyton v. Apfel</u>, 20 F.Supp.2d 156, 163 (D.Mass. 1998) [discussing reliance on Grids where non-exertional limitations were found to not significantly effect claimant's ability to engage in substantial gainful activity]; <u>Egleston v. Bowen</u>, 851 F.2d 1244, 1247 (10th Cir. 1988) [presence

11

of non-exertional limitations does not preclude use of the Grids if non-exertional limitations do not further limit the claimants ability to perform work]. Therefore this argument is also without merit.

### (Opinion of Dr. Lawson)

Finally, Plaintiff complains that the ALJ improperly discounted the opinion of his treating physician, Dr. Lawson, as to the severity of his condition. This claim is without merit. First, the medical records from Dr. Lawson submitted to the ALJ for consideration do not contradict the findings and conclusions of the ALJ in his decision. See (R.pp. 157, 159, 161). The records reflect that Dr. Lawson referred Plaintiff to specialists, Dr. Rhea and Dr. Edwards, for treatment of his condition, and neither of these two physicians ever opined that Plaintiff was totally disabled. To the contrary, they opined that Plaintiff was capable of work, and even encouraged him to return to work. See (R.pp. 130-131, 149). None of Dr. Lawson's medical records considered by the ALJ contain anything to contradict the opinions of Dr. Rhea and Dr. Edwards.

Indeed, Plaintiff's complaint actually concerns records from Dr. Lawson that he submitted to the Appeals Council *after* the decision of the ALJ, not Dr. Lawson's previous records. Specifically, Plaintiff submitted a physical capacities evaluation, which was not completed by Dr. Lawson until January 9, 2004, together with a clinical assessment of pain. (R.pp. 165-166). In these documents, Dr. Lawson opined that Plaintiff was unable to work due to his persistent and chronic low back pain. The Appeals Council considered these documents, but concluded that they did not "provide a basis for changing the Administrative Law Judge's decision," noting that under the rules the Appeals Council would review Plaintiff's case only if the new evidence was found to be "material evidence" and that the ALJ's decision was "contrary to the weight of all the evidence now in the record." (R.pp. 5-7).

12

The undersigned can find no reversible error in the actions of the Appeals Council. Dr. Lawson's January 2004 opinion not only is contradicted by the other medical evidence in the record, including the opinions of Dr. Rhea and Dr. Edwards, but it also contains no record of any new examinations or findings to support these conclusions. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]. See also 20 C.F.R. § 404.1527 (d)(5) (2001) [opinion of a specialist about medical issues related to his or her area of speciality are entitled to more than weight than the opinion of a physician who is not a specialist].

Since Dr. Lawson's January 2004 opinions post-date the ALJ's decision, Plaintiff may want to consider whether a deterioration has occurred in his condition since the date of the decision. If Plaintiff's condition significantly deteriorated after the ALJ's decision, resulting in the condition as opined to by Dr. Lawson in January 2004, Plaintiff may file a new application for benefits. Skeens v. Secretary of Health and Human Services, 737 F.Supp. 362, 366 (W.D.Va. 1990); cf. 20 C.F.R. § 404.976(b)(1) (2004).

**Conclusion**

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

13

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

s/ BRISTOW MARCHANT
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

April   22,    2005